UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LUIS GALARZA,
*Plaintiff*,

v.

SCOTT ERFE *et al.*,
*Defendants*.

No. 3:18-cv-00663 (JAM)

**ORDER GRANTING PARTIAL
MOTION TO DISMISS**

Plaintiff Luis Galarza is a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed this lawsuit *pro se* and *in forma pauperis* to challenge his treatment by prison officials in connection with a security investigation that disclosed his use of a cell phone in prison. The defendants have filed a partial motion to dismiss all claims alleged in the amended complaint except for Galarza's First Amendment retaliation claims. I will grant the partial motion to dismiss.

BACKGROUND

The following facts are derived from the allegations in the amended complaint, Doc. #36, and are accepted as true only for purposes of this ruling. Galarza names the following seven defendants at Cheshire Correctional Institution ("Cheshire") in their individual and official capacities: (1) Warden Scott Erfe; (2) Lieutenant Boyd; (3) Officer Peracchio; (4) Officer Verdura; (5) Officer Vargas; (6) Captain Watson; and (7) Officer Wright. *Id.* at 1, 2 (¶ 4).

On January 26, 2018, defendants Boyd, Wright, Vargas, Verdura, and Peracchio entered Galarza's cell at 3:30 a.m., "jumped on him, ripped him out of bed [ ], slammed him on the ground and placed him in handcuffs." *Id.* at 2 (¶ 6). They escorted him to the Restrictive Housing Unit ("RHU") and ordered him to remove his clothing for a strip search. *Ibid.* (¶ 7). During the

1

search, Lieutenant Boyd ordered Galarza to bend at the waist and spread his buttocks using his hands. *Id.* at 2-3 (¶ 8). When Galarza complained that this procedure violated DOC Administrative Directive 6.7, Lieutenant Boyd threatened to spray Galarza with a chemical agent if he did not comply. *Ibid.* Galarza complied out of fear. *Ibid.* Galarza was also required to lift his genitalia and then "plaintiff was forced to run his fingers, that were just touching his buttocks and genitals[,] through his lips." *Ibid.* Following the search, Galarza was placed in a cell. *Id.* at 3 (¶ 9).

On January 29, 2018, Vargas and Wright took Galarza to an interrogation room where they as well as Boyd, Verdura, and Peracchio questioned him about a cell phone that was found on another inmate. *Ibid.* (¶¶ 10-11). When Galarza asked what that had to do with him, Lieutenant Boyd said he knew Galarza had used the phone and demanded to know where the phone came from. *Id.* at 3-4 (¶¶ 12-13). Galarza said that he was not a snitch and denied knowing anything about the phone. *Id.* at 4 (¶ 14). Officer Verdura told Galarza that he would not be released from RHU unless he gave them the information. *Ibid.* (¶ 15). The defendants questioned Galarza for thirty minutes and then returned him to his cell. *Ibid.* (¶ 16).

On January 30, 2018, Galarza told defendant Captain Watson that Boyd, Wright, Vargas, Verdura, and Peracchio had threatened him if he did not cooperate in their investigation, and Captain Watson said he would investigate the matter. *Ibid.* (¶ 17). The following day, Officers Vargas and Peracchio escorted Galarza to an interrogation room. *Id.* at 4-5 (¶ 18). They were angry that Galarza had complained to Captain Watson, and Officer Vargas threatened to take all of Galarza's property in response. *Ibid.* Officer Peracchio said they had information from a confidential informant that Galarza had used the phone and asked which officer supplied the phone. *Id.* at 5 (¶ 19). Officer Verdura threatened to have the state police arrest members of

Galarza's family for the crime of bringing a cell phone into a correctional facility. *Ibid.* (¶ 20). Lieutenant Boyd threatened to place Galarza on high security status and take all of his property. *Ibid.* (¶ 21). Galarza said that no phone had been found in his possession and he was not a snitch. *Ibid.* (¶ 22). He asked that they leave his family alone. *Ibid.*

On February 5, 2018, Galarza asked Captain Watson about the strip search procedure. *Ibid.* (¶ 23). Captain Watson said that the procedure was part of "the Watson plan." *Ibid.* When Galarza said he found the procedure humiliating and embarrassing, Captain Watson responded that he should not have come to prison then. *Id.* at 6 (¶ 24).

On February 12, 2018, Galarza filed a grievance about his treatment by correctional staff at Cheshire. *Ibid.* (¶ 25). On February 20, 2018, Galarza wrote to Warden Erfe, stating that he had been in RHU for 26 days without receiving any disciplinary report, and he reported the strip search procedure and the threats he received. *Ibid.* (¶ 26). On February 22, 2018, Galarza received two disciplinary reports. *Ibid.* (¶ 27).

On March 6, 2018, Galarza wrote to Warden Erfe a second time because he had not received a timely disciplinary hearing and he was still in RHU. *Ibid.* (¶ 28). On March 14, 2018, Galarza was found guilty of both charges. *Ibid.* (¶ 29). He complained that the hearing was untimely. *Id.* at 7 (¶ 30). On March 18, 2018, Galarza appealed both charges. *Ibid.* (¶ 33).

On March 15, 2018, Galarza was transferred to MacDougall-Walker Correctional Institution ("MacDougall-Walker"). *Ibid.* (¶ 31). When his property arrived, his television, fan, radio, video game console, video games, and television antenna were missing. *Ibid.* (¶ 32). On March 19, 2018, Galarza filed a Lost/Damaged Property Investigation Form (CN 9609) to recover those items, which he had purchased from the commissary. *Ibid.* (¶ 34); *see also id.* at 15 (lost property form). On or about June 14, 2018, he received a letter from the Administrative

Remedies Coordinator confirming that the items were confiscated by Cheshire's Intelligence Unit and closing the investigation into the matter. *Id.* at 14. On July 2, 2018, Galarza filed a Property Claim (CN 9611/1) requesting reimbursement for the confiscated property. *Id.* at 16.

In the meantime, on April 9, 2018, Galarza received a Restrictive Status Notification of Decision form stating that he was being placed on high security status. *Id.* at 7 (¶ 35). He contends that he does not meet any of the stated criteria for placement on high security status. *Id.* at 7-9 (¶¶ 36-37). While on high security status, prisoners are denied contact visits and the ability to perform "certain" jobs, are subjected to "constant" cell searches, and are precluded from earning "good time" risk reduction earned credit ("RREC"). *Id.* at 10 (¶¶ 41-42).

On April 19, 2018, Galarza filed this action pursuant to under 42 U.S.C. § 1983. Doc. #1. Based on an initial review pursuant to 28 U.S.C. § 1915A, I dismissed the complaint without prejudice on the ground that he had not alleged facts that give rise to plausible grounds for relief for any of his constitutional claims. Doc. #20; *Galarza v. Erfe*, 2019 WL 121784 (D. Conn. 2019). Galarza filed a motion to reopen along with a proposed amended complaint. Doc. #22. I denied the motion to reopen on the ground that his additional allegations were not sufficient to give rise to plausible grounds for relief. Doc. #25; *Galarza v. Erfe*, 2019 WL 8756874 (D. Conn. 2019). Galarza then filed another motion to reopen, Doc. #33, and another proposed amended complaint, Doc. #36. I granted the motion to reopen and ordered service of the amended complaint on defendants. Doc. #35.

Galarza asserts the following claims in his amended complaint: (1) First Amendment retaliation by Boyd, Wright, Vargas, Verdura, and Peracchio for taking his property and placing him on high security status after he complained about their conduct; (2) Fourth Amendment violation by Boyd, Wright, Vargas, Verdura, and Peracchio for subjecting him to a sexually

4

demeaning strip search and by Captain Watson for creating the strip search policy; (3) Fourteenth Amendment due process violation by Boyd, Wright, Vargas, Verdura, and Peracchio for depriving him of his property without a disciplinary report and placing him on high security status without notice and a hearing; and (4) supervisory liability against Warden Erfe for failing to remedy the violations after becoming aware of them. Doc. #36 at 9-12 (¶¶ 38-45). Galarza seeks compensatory and punitive damages and an injunction ordering that he be removed from high security status, that the strip search practices at Cheshire be "change[d]," and that his property be returned or replaced. *Id.* at 12.

The defendants have now moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) except for Galarza's First Amendment retaliation claims. Docs. #51, #63. They move to dismiss on grounds that Galarza fails to allege sufficient facts to state plausible claims for relief, that the defendants are protected by qualified immunity from the Fourth Amendment strip search claim, and that the request for injunctive relief does not comply with the requirements of the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A). Doc. #51-1.[1] I will grant defendants' partial motion to dismiss.

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Supreme Court has explained, this "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted

---

[1] The defendants move to dismiss a number of claims previously asserted by Galarza but that are no longer expressly alleged, such as an Eighth Amendment excessive force claim contesting the manner in which he was removed from his bed on January 26, 2018. *See* Doc. #51-1. But as Galarza clarified in his opposition papers, he has abandoned those claims. *See* Docs. #57, #62. Therefore, I do not consider them.

unlawfully." *Ibid.* In other words, a valid claim for relief must cross "the line between possibility and plausibility." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

In addition, a complaint cannot rely on conclusory allegations. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). A complaint that engages in a threadbare recital of the elements of a cause of action but that fails to include supporting factual allegations does not establish plausible grounds for relief. *Ibid.* In short, a court's role when reviewing a motion to dismiss under Rule 12(b)(6) is to determine if the complaint—apart from any of its conclusory recitals—alleges enough facts to state a facially plausible claim for relief.

If the plaintiff is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

***Fourth Amendment strip search***

Galarza alleges that the strip search violated his rights under the Fourth Amendment which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. In the prison context, the Fourth Amendment proscribes unreasonable strip searches. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016) (*per curiam*). On the one hand, if a prisoner's claim is a challenge to a search regulation or policy, then a court should decide if the regulation or policy is reasonably related to legitimate penological interests. *Id.* at 57-58 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). On the other hand, if a prisoner's claim arises from a single or isolated search, then a court should consider the following four factors to decide if the

6

particular search was reasonable: "(1) the scope of the particular intrusion; (2) the manner in which it is conducted; (3) the justification for initiating it; and (4) the place in which it is conducted." *Id.* at 58 (citing *Bell*, 441 U.S. at 559). A strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (collecting cases), *aff'd*, 461 F. App'x 18 (2d Cir. 2012).

Qualified immunity shields government officials from claims for money damages unless a plaintiff shows the official has violated clearly established law such that any objectively reasonable official would have understood that his or her conduct amounted to a violation of the plaintiff's constitutional rights. *See Mara v. Rilling*, 921 F.3d 48, 68-69 (2d Cir. 2019). In order to determine whether a right is clearly established, courts in this circuit must consider "Supreme Court decisions, [Second Circuit] decisions, and decisions from other circuit courts." *Simon v. City of New York*, 893 F.3d 83, 92 (2d Cir. 2018). A right must be defined with reasonable specificity and is clearly established only if the relevant case authority is directly on point or clearly foreshadows a ruling recognizing the right. *See Sloley v. VanBramer*, 945 F.3d 30, 40 (2d Cir. 2019).

The amended complaint makes clear that the search of Galarza took place in the context of an investigation for prison contraband that involved the recovery of a cell phone from another prisoner. Therefore, Galarza has failed to allege facts that give rise to plausible grounds to conclude that there was no penological objective to support a visual body cavity search, including the requirement that he spread his buttocks and lift his genitalia for a visual inspection for contraband by prison officials.

But Galarza also alleges that Boyd, Wright, Vargas, Verdura, and Peracchio made him run his fingers through his lips after touching his private areas or else they would spray him with a chemical agent. That additional allegation calls into question the manner in which the search was conducted and whether it was necessary or appropriate for Galarza to be forced to touch his lips after he had touched his genital and buttocks area. It seems at least plausible that such conduct was wholly unnecessary and designed to intimidate, harass, or punish Galarza, such that it amounted to a violation of the Fourth Amendment.

Nevertheless, numerous courts have rejected Fourth Amendment claims based on inmates' allegations that they were wrongfully required to touch their mouth after touching their genital area during the course of a visual body cavity search. *See Brown v. Blaine*, 185 F. App'x 166, 170 (3d Cir. 2006) (citing *Thompson v. Souza*, 111 F.3d 694, 700 (9th Cir. 1997)); *Buentello v. Rayford*, 2018 WL 3625858, at *5 (collecting cases), *report and recommendation adopted*, 2018 WL 3619244 (E.D. Tex. 2018). Although defendants fail to cite any of this precedent, it nonetheless forecloses me from concluding that the defendants violated clearly established law. Accordingly, I will grant the motion to dismiss the Fourth Amendment strip search claim because the defendants are entitled to qualified immunity.

### *Fourteenth Amendment due process*

Galarza claims a violation of his procedural due process rights in connection with his high security designation and in connection with the confiscation of his property. In order to establish a claim of a violation of procedural due process, a prisoner must show that: (1) he has been deprived of a liberty or property interest; and (2) the procedures followed by the State were constitutionally deficient. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

*High security designation at MacDougall-Walker*

Liberty interests may arise from either the Constitution itself or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) ("States may under certain circumstances create liberty interests which are protected by the Due Process Clause."). In the prison context, which involves individuals whose liberty interests have already been severely restricted, a prisoner has a liberty interest protected under the Due Process Clause only if the State created such an interest in a statute or regulation and the deprivation of that interest caused the prisoner to suffer an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484-88; *see also Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000) ("As a result of *Sandin*, a prisoner has a liberty interest only if the deprivation . . . is atypical and significant and the state has created the interest by statute or regulation.").

Galarza has alleged that prisoners on high security status are denied contact visits and the ability to perform some unspecified number of prison jobs, are subjected to frequent searches of their cells, and are precluded from earning Risk Reduction Earned Credits ("RRECs"). But he has not alleged that he individually suffered any of these deprivations in the ten days between his placement on high security status and his filing of this lawsuit. For example, Galarza does not allege that he ever sought to receive visitors or wished to obtain one of the restricted jobs, that his cell was ever searched, or that he would have been entitled to RRECs but for his security status.

Even if Galarza suffered those deprivations for that ten-day period, he has not shown that they amount to atypical and significant hardships when compared to ordinary prison life. *See Carilli v. Semple*, 2020 WL 2097741, at *5 (D. Conn. 2020) (noting that Connecticut prisoners

9

have no constitutionally protected interest in prison employment) (citing *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987)); *Mclellan v. Chapdelaine*, 2017 WL 3841469, at *3 (D. Conn. 2017) (noting that prisoners have no liberty interest in the temporary withdrawal of contact visits) (citing *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003)); *Vega v. Rell*, 2012 WL 1298678, at *2 (D. Conn. 2012) (noting that Connecticut prisoners have no liberty interest in earning RRECs) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974), and *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000)); *Gill v. Pact Org.*, 1997 WL 539948, at *10 (S.D.N.Y. 1997) (noting that prisoners have no constitutional protection from frequent cell searches) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984)). Accordingly, I will grant the motion to dismiss Galarza's Fourteenth Amendment due process claim as to his placement on high security status.

*Seizure of property at Cheshire*

Connecticut provides a procedure for prisoners to seek the return of any lost or missing property. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (noting that "Connecticut provides inmates with a remedy for lost or destroyed property"). Although Galarza asserts that the procedure is inadequate, the amended complaint demonstrates that he did not properly exhaust that procedure. *See Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 516 (2d Cir. 2014) ("[I]f the only process guaranteed to one whose property is taken is a post-deprivation remedy, a federal court cannot determine whether the state's process is constitutionally deficient until the owner has pursued the available state remedy."). The most recent action he appears to have taken was filing a Property Claim in July 2018, months after he initiated this federal action, and he has not alleged that the Lost Property Board failed to act on his claim within the one-year time limit established under Administrative Directive 9.6 § 16(E). Even if the Lost Property Board denied his claim, Galarza could have then filed a claim with the Claims Commissioner. *Id.* § 16(F).

10

Galarza's failure to show that he exhausted the available administrative procedures for the return or reimbursement of his property furnishes a second ground for dismissal. Notably, because the "complaint did not assert that filing a claim with the Claims Commissioner was an inadequate remedy for his lost property claim," Galarza has "failed to allege a violation of his due process rights." *Riddick*, 731 F. App'x at 13. Accordingly, I will grant the motion to dismiss Galarza's Fourteenth Amendment due process claim as to the confiscation of his property.

### *Supervisory liability*

Galarza seeks to hold Warden Erfe liable for the violation of his rights by subordinate officials. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). An official's personal involvement in a constitutional violation can be shown by his direct participation in the violation or by his supervisory capacity over those directly participating. *See Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020). An official is liable for supervising constitutional violations if he, among other things, failed to remedy the violation after being informed of it through a report or appeal. *See Lombardo v. Graham*, 807 F. App'x 120, 124 (2d Cir. 2020) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Simply alleging that an official held a high position of authority is not enough for that official to be liable on a theory of supervisory liability. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016).[2]

Galarza alleges that Warden Erfe is liable for the other defendants' conduct because he was informed of their constitutional violations through inmate requests and grievances but failed

---

[2] In *Lombardo*, the Second Circuit observed that the Supreme Court's later decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), may require "more direct personal involvement" than the five examples articulated in *Colon*. 807 F. App'x at 124 n.1.

11

to remedy them. But I have already found that the defendants are entitled to qualified immunity on Galarza's Fourth Amendment strip search claim and that Galarza failed to plausibly allege a Fourteenth Amendment due process claim. As to Galarza's First Amendment retaliation claims, he alleges only that he informed Warden Erfe of the threats he received during the investigation interview, and he did so before those threats materialized into the alleged retaliatory actions of confiscating his property and placing him on high security status. Galarza fails to allege any non-conclusory facts to show that Warden Erfe failed to act on the information about the threats or that he became aware that those threats materialized into adverse actions and thus constitutional violations that required remedies. *See Hill v. Chalanor*, 128 F. App'x 187, 189 (2d Cir. 2005) (noting that threats "without any allegation that [the defendant] carried through on those threats, did not constitute adverse action" for purposes of a First Amendment retaliation claim). Accordingly, I will grant the motion to dismiss all claims against Warden Erfe.

### *Injunctive relief*

Galarza seeks injunctive relief. State officials sued in their official capacities under 42 U.S.C. § 1983 are immune from suit for damages pursuant to the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002). But the Eleventh Amendment does not bar a prisoner from suing state officials in their official capacities for injunctive relief if the prisoner: (1) alleges an ongoing violation of federal law; (2) seeks prospective relief; and (3) the defendant is capable of providing the requested relief. *See Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020); *Siani v. State Univ. of New York at Farmingdale*, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014) (citing *CSX Transp., Inc. v. New York State Office of Real Prop. Servs.*, 306 F.3d 87, 98-99 (2d Cir. 2002)).

Galarza requests that I issue an injunction ordering that he be removed from high security status, that the strip search practices at Cheshire be changed in some unspecified way, and that his property be returned or replaced. As to his Fourth Amendment strip search claim and assuming that he has plausibly alleged a Fourth Amendment violation (apart from whether any of the defendants are protected from monetary liability by qualified immunity), Galarza does not allege facts to suggest any ongoing violation or likelihood of a recurrence of an unlawful strip search that would justify a grant of injunctive relief. *See, e.g., Scozzari v. Tantillo*, 2020 WL 5118018, at *3 (D. Conn. 2020). As to his due process claims, no injunctive relief is warranted for lack of any merit as discussed above to his claims.

## CONCLUSION

For the foregoing reasons, the partial motion to dismiss (Doc. #51) is GRANTED as to the Fourth Amendment strip search claim, the Fourteenth Amendment due process claims, and the claims for injunctive relief stemming from the Fourth Amendment and Due Process claims. This action shall proceed solely as to the First Amendment retaliation claims for money damages against defendants Boyd, Wright, Vargas, Verdura, and Peracchio in their individual capacities. The Clerk of Court shall terminate Captain Watson and Warden Erfe as defendants in this action.

It is so ordered.

Dated at New Haven this 11th day of September 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge